UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| MICHAEL JAMES BENOIT | CIVIL ACTION NO. 10-cv-1110 |
| VERSUS | |
| MICHAEL W. NEUSTROM, ET AL | MAGISTRATE JUDGE HANNA<br>BY CONSENT OF THE PARTIES |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDERS

### Procedural Background

This case is before this Court by consent of the parties pursuant to 28 U.S.C. §636. On October 23, 2012, following a telephone status conference among the parties and the undersigned, an order of administrative closure was entered [Doc. 68], without prejudice to the right of the parties to reopen the action upon disposition of the issues surrounding the liens of Medicaid and Medicare and its impact on settlement efforts. The Court retained jurisdiction over the case pursuant to *Kokkonen v. Guardian Life*, 511 U.S. 375, 114 S.Ct. 1673 (1994). On October 29, 2012, a Motion for Declaratory Judgment was filed by the plaintiff [Doc. 69], confirming the terms of a settlement agreement reached with the defendants, calculating the future potential medical expenses for treatment of Plaintiff's alleged injuries in compliance with the Medicare Secondary Payor Act at 42 USC

§1395y(b)(2), and representing to the court that the settlement amount is insufficient to provide a set-aside totaling 100% of the MSA. In the motion, the plaintiff asks the court to enter judgment approving the settlement reached by the parties, declaring the interests of Medicare adequately protected by the terms of the settlement which includes a possible allocation proportionate to Plaintiff's recovery, reducing or otherwise limiting the past Medicaid lien, and ordering Plaintiff's counsel to set aside from the settlement proceeds that appropriate amount of money as referenced in the settlement documents and depositing that sum into an interest-bearing account to be self-administered by Shelia Benoit, wife of Michael Benoit, for the purposes of paying future medical expenses related to the injuries her husband received in the incident sued upon.

The Court set the matter for hearing on March 26, 2013[1] and ordered service to be made by the Clerk of Court on the Secretary of Health and Human Services, Chief Counsel of HHS/OGC for Region VI and the Civil Chief of the Office of the United States Attorney for the Western District of Louisiana. [Doc. 70, 71] On February 5, 2013, the court received a copy of a letter from the United States Attorney's Office to all parties to this litigation, containing the following declaration:

---

[1] The case was reopened and placed on the active docket of the undersigned by order of December 5, 2012. [Doc. 71]

> ...the United States has a statutory right of reimbursement and subrogation against any settlement proceeds for past conditional payments made on behalf of Michael Benoit for injuries sustained as a result of the incident that occurred on January 1, 2012. 42 U.S.C. §1395y(b). At this time, CMS's contractor, Medicare Secondary Payer Recovery Contractor, has issued a demand letter in the amount of **$2,777.88** for conditional payments made by Medicare specifically for the injuries at issue in the matter. Should the plaintiff accept this determination, payment in the form of a check or money order should be made payable to Medicare.[*Emphasis added*]

By letter to Plaintiff's counsel on March 13, 2013, the Medicaid lien was waived, with conditions for creation of a Special Needs Trust. [Doc. 72-1] Both letters have been made a part of the record.

**Factual Background**

The plaintiff, Michael Benoit filed suit against Michael Neustrom, individually and as Sheriff of Lafayette Parish and Rob Reardon, individually and as Warden of the Lafayette Parish Correctional Center. [Doc. 1] The suit alleges that the defendants and their employees failed to properly evaluate his condition upon his transfer to Lafayette Parish Correctional Center for incarceration after sentencing on an O.W.I. charge. Plaintiff has alleged that he was allowed to remain in his cell without pre-medical evaluation, when he was obviously suffering the effects of alcohol detoxification. [Doc. 1, para. 13] Benoit was later found face-down and unresponsive in his cell. He was treated by Acadian Ambulance personnel who then transported

Benoit to Our Lady of Lourdes Regional Medical Center, where he was diagnosed with Hypoxic Brain Injury, secondary to seizure, followed by cardiac arrest, secondary to alcohol withdrawal and hypoxic encephalopathy. [Doc. 1, para. 15] The result was an anoxic brain injury, with consequential bladder incontinence, anosmia, short term memory deficit, tremors and behavioral issues. While hospitalized, Benoit was temporarily ventilator-dependent and needed gastrostomy tube feedings temporarily. Following a lengthy hospitalization, he underwent physical, occupational and speech therapies. He was in a nursing home until October, 2009. He has continued with outpatient treatment for behavioral health issues and neurology monitoring. As a result of his injuries, Mr. Benoit's past medical expenses were funded by Medicare and/or Medicaid.

In October, 2012, the parties reached a settlement agreement, conditioned upon Plaintiff's release of all claims against all defendants and Plaintiff's assumption of sole responsibility for protecting and satisfying the interests of Medicare and Medicaid. In that pursuit, a Medicare Set-Aside Report was prepared by MedAllocators, Inc. for Shapiro Solutons MSA from a review of the medical records and research related to Benoit's injury claim, diagnosis and medical treatment. [Doc. 69, Ex. 1] The Medicare Set-Aside Cost Projections range from $277,758.62 to $333,267.02.[Doc. 69, Ex. 1-2]

At the hearing on the subject motion, the sum of $2,777.88 was established without objection as the amount to be reimbursed to Medicare for the conditional payments made by Medicare for Mr. Benoit for the injuries at issue in this matter. It was also confirmed that a special needs trust will be created in exchange for a lien waiver by Medicaid, and the proceeds from that trust will take care of Mr. Benoit's medical needs going forward until exhaustion of those funds. The remaining issue for court consideration is the question of the future medical care for Mr. Benoit as a result of the subject accident and the extent to which the Medicare set-aside trust can or should be reduced to account for the financial hardship to the beneficiary, Michael Benoit.

The evidence reflects the settlement amount in this case is $100,000, reduced to $55,707.98, after payment of fees, expenses and the Medicare conditional payment. This sum is the total amount of money subject to a potential MSA. Also submitted into evidence was the MSA prepared by MedAllocators, Inc., with future cost estimates considerably larger than the net settlement figure. Also submitted was a Social Security financial statement, offered to demonstrate the referenced financial hardship on the plaintiff.

Shelia Benoit, wife of the plaintiff, testified regarding her actions as caretaker of her husband and her responsibilities as his representative regarding his medical

needs and finances. She agreed with the summarization of the plaintiffs current medical condition to include cognitive deficits, bladder incontinence, brain injury and depression issues. The plaintiff is physically fit, according to his wife, but he has very short term memory and grand mal seizures, controlled by medication. He sees doctors every three months and sees a neurologist every six months. He is unable to work. He attends an adult day center two days a week, and he has personal care assistance in his home three days a week. In response to questions, Mrs. Benoit described some home modifications which need to be made to accommodate her husband's needs, including a walk-in shower, a hospital-type bed, slip-resistant flooring, disposable undergarments, and reliable transportation. She reports these things are not provided or funded by Medicare or Medicaid. The family's current sources of income are Social Security disability benefits for both husband and wife, totaling less than $1,500 per month. The home mortgage payment is over $400 per month.

    Mrs. Benoit described her understanding of the special needs trust and how it is administered. She understands she must account for all money in the trust. She also expressed her understanding of what must occur after the trust funds are exhausted.

The defendants were heard by the undersigned on the liability issues, and each expressed their positions that the case is defensible, and, in fact, dispositive motions were contemplated by all defendants before confection of the referenced settlement agreement, ultimately funded by the Sheriff and Advantage Nursing defendants.

### *Discussion*

A handout from the MSP Regional Coordinator for CMS in Region VI provides in pertinent part:

> Medicare's interests must be protected; however, CMS does not mandate a specific mechanism to protect those interests. The law does not require a "set-aside" in any situation. The law requires that the Medicare Trust Funds be protected from payment for future services when there is a recovery for future medicals whether it is a Workers' Compensation or liability case. There is no distinction in the law.
>
> Set-aside is our method of choice and the agency feels it provides the best protection for the program and the Medicare beneficiary.
>
> . . .
>
> Anytime a settlement, judgment or award provides funds for future medical services, it can be reasonably expected that those monies are available to pay for future services <u>related to what was claimed and/or released in the settlement, judgment or award</u>.
>
> . . .
>
> The fact that a settlement/judgment/award does not specify payment for future medical services does not mean they are not funded. The fact that the agreement designates the entire amount for pain and suffering does

>not mean that future medicals are not funded. *The only situation in which Medicare recognizes allocation of liability payments to nonmedical losses is when payment is based on a court of competent jurisdiction's order after their review on the merits of the case* (a decision in a live case or controversy regarding which medical items and/or services are related to what is being claimed, released, or has the effect of being released, made by a court or a binding neutral finder of fact, upon development of the evidentiary record, and being fully advised of the Medicare beneficiary's past and potential medical costs, including, if applicable, Medicare's conditional payments to date.)[2]

The Court notes that language substantively identical to the italicized language contained in the handout was asserted by HHS in *Bradley v. Sebelius,* 621 F.3d 1330 (11th Cir. 2010), an allocation case in which HHS sought to recover conditional payments it had made to or on behalf of a decedent out of settlement proceeds. The settlement proceeds were inadequate to meet the value of the survivor's claims and the full Medicare lien. A Florida probate court determined the amount of the limited settlement proceeds to be allocated to the medical expense recovery.

Using principles of equity, the probate court reduced Medicare's lien based on the proportion of Medicare's contribution to what the total settlement would have been worth if adequate funds were available. HHS challenged the probate court's allocation, citing the language quoted above as taken from the "Medicare Secondary Payer Manual," MSP Manual (CMS Pub. 100-05) Chapter 7, § 50.4.4. The district

---

[2] Italicized emphasis added; underscore in original.

court agreed with HHS. However, the court of appeals, in a *de novo* review, reversed and held in pertinent part:

> The Secretary declined to take any part in the litigation although at all times her position was adverse to the interests of the surviving children. The probate court made the allocation, finding that the Secretary should recover the sum of $787.50. Yet, still, the Secretary, citing no statutory authority, no regulatory authority, and no case law authority, merely relied upon the language contained in one of its many field manuals and declined to respect the decision of the probate court.
>
> In essence, the Secretary is asserting that its field manual is entitled to deference under *Chevron U.S.A. Inc. V. Natural Resources Defense Council inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Supreme Court has stated that "agency interpretations contained in policy statements, manuals, and enforcement guidelines are not entitled to the force of law."
>
> . . .
>
> The Secretary's position is unsupported by the statutory language of the MSP and its attending regulations. The Secretary's *ipse dixit* contained in the field manual does not control the law.
>
> . . .
>
> There is a second reason that the Secretary's position, as adopted by the district court, is in error. Historically, there is a strong public interest in the expeditious resolution of lawsuits through settlement. . . . Throughout history, our law has encouraged settlements. . . The Secretary's position would have a chilling effect on settlement. The Secretary's position compels plaintiffs to force their tort claims to trial, burdening the court system. It is a financial disincentive to accept otherwise reasonable settlement offers. It would allow tortfeasors to escape responsibility.

*Bradley v. Sibelius*, 621 F.3d at 1338-1339 (citations omitted).

Based upon the records and proceedings in this matter and the stipulations and submissions of counsel, this Court makes the following findings of fact:

1. Medicare does not currently require or approve Medicare set asides when personal injury lawsuits are settled. Medicare does not currently have a policy or procedure in effect for reviewing or providing an opinion regarding the adequacy of the future medical aspect of a liability settlement or recovery of future medical expenses incurred in liability cases.

2. Both liability and the reasonableness and necessity of Benoit's medical treatment, as well as his economic losses and general damages were contested in this litigation. It is probable that, based on the factual representations of the defendants, summary judgment could have been granted in favor of some, if not all, defendants. Even if summary judgment had been overcome, the specter of a verdict adverse to the plaintiff on liability was quite real.

3. Had this lawsuit been tried, Mr. Benoit would have been entitled to recover pecuniary and non-pecuniary damages. This injury occurred on July 20, 2009. Since then Mr. Benoit has been totally and permanently

disabled. As a result of the incident at issue, he received injuries to his body, including anoxic brain injury, with consequential bladder incontinence, anosmia, short term memory deficit, tremors and behavioral issues to the point he required skilled nursing assistance in a nursing home. He has incurred medical expenses in the past that total in excess of $80,000, which were funded by Medicare/Medicaid. The amount of future medical expenses is estimated in a proposed MSA to be in the range from approximately $278,000 to $333,000.

4. Considering all of the facts and circumstances, including the plaintiffs' significant past and future losses, offset by the significant liability issues in the case, the parties' agreement to settle this case for a payment of $100,000.00 by the defendants represents a reasonable compromise to avoid the uncertainty and expense which would be incurred if this case were tried.

5. Mr. Benoit will not obtain the age of 65 within 30 months of the date of settlement. However, he currently receives Social Security disability benefits. He has submitted medical expenses related to the injuries received in the incident that forms the subject matter of this lawsuit for payment by Medicare, and Medicare has agreed to accept $2777.88 in

complete satisfaction of the conditional payments made by Medicare for treatment related to the incident at issue. The Court finds the estimate of future medical costs set forth in the MSA to be both reasonable and reliable.

6. As a condition of the settlement with the defendants, Mr. Benoit has agreed to set aside a sum of money to protect Medicare's interests under the MSP. He argues that 10% of the gross settlement proceeds would be an equitable amount since the recovery obtained is approximately 10% of the possible recovery if he had prevailed on all the liability issues. This Court disagrees with that methodology but considering the financial hardships of the plaintiff, the Court finds that an equitable allocation is in order for the family to fund the special needs trust for much needed items not otherwise covered by Medicare for living assistance for Mr. Benoit. The net settlement proceeds, after reimbursement of conditional payments to Medicare is $55,707.98. The mid-point range in the MSA projections is $305,512.50. The net settlement is 18.2% of that figure. Using that percentage applied to the net settlement proceeds, the sum of money to be set aside in trust for future medical expenses is $10,138.00. The Court finds that this

amount adequately protects Medicare's interests and should be available to provide funding for future medical items or services related to what was claimed and released in this lawsuit that would otherwise be covered or reimbursable by Medicare.

7. The cognitive impairments sustained by Michael Benoit as a result of the incident preclude him from administering the fund that he intends to utilize for payment of future medical items or services that would otherwise be covered by Medicare; therefore, Shelia Benoit will assume that responsibility as the administrator of the fund as she is also the trustee for the special needs trust.

8. Shelia Benoit is aware of the obligation to reimburse Medicare for the conditional payments made by Medicare for any incurred medical expenses related to the claimed injuries in this lawsuit.

9. There is no evidence that Mr. Benoit, his attorneys, any other party or any other party's representative, are attempting to maximize other aspects of the settlement to Medicare's detriment.

Based upon the foregoing findings of fact, the undersigned draws the following conclusions of law:

1. Jurisdiction over the underlying litigation is based on 28 U.S.C. § 1332. This Court has jurisdiction to decide this motion pursuant to 28 U.S.C. § 2201 in that there is an actual controversy and the parties seek a declaration as to their rights and obligations in order to comply with the MSP and its attendant regulations in the context of a third party settlement for which there is no procedure in place by CMS.

2. Medicare may obtain secondary payer status under the MSP if payment has been made, or can reasonably be expected to be made, under a workers' compensation law of a State or under an automobile or liability insurance policy, both of which are defined in the statute as a "primary plan." 42 U.S.C. § 1395y(b)(2)(A)(ii). A primary plan's responsibility for payment can be determined by judgment or settlement. 42 U.S.C. § 1395y(b)(2)(B)(ii), 42. C.F.R. § 411.22(b)(1-3).

3. By virtue of the terms and obligations in the settlement of his claims, and his receipt of the settlement funds in conjunction therewith, Michael Benoit has become an "entity who received payment from a primary plan," and is therefore responsible as a primary payer for future medical items or services which would otherwise be covered by Medicare, that are related to what was claimed and released in this lawsuit, in the

amount of $10,138.00. To the extent there are items or services incurred by Michael Benoit in the future that would otherwise be covered or reimbursable by Medicare, that are related to what was claimed and released in this lawsuit, Medicare shall not be billed for those items or services until the funds received by Michael Benoit for that purpose through the settlement are exhausted.

4. Michael Benoit is obligated to reimburse Medicare for conditional payments made by Medicare prior to the time of the settlement and for all medical expenses submitted to Medicare prior to the date of this order, even if such conditional payments are asserted by Medicare subsequent to the effective date of this order. The parties having reached agreement, the conditional payment to be made to Medicare for satisfaction of Michael Benoit's reimbursement obligation is $2,777.88.

5. The sum of $ 10,138.00, to be utilized by Michael Benoit out of the settlement proceeds to pay for future medical items or services that would be otherwise covered by Medicare, reasonably and fairly takes Medicare's interests into account in that the figures are based on reasonably foreseeable medical needs, (as opposed to the standard of proof required by the substantive law that would be applicable if the

      case were tried on the merits), based on the most recent information from the treating physicians, utilizing fee schedules that would be acceptable to CMS according to the MSA evaluation.

6. Since CMS provides no other procedure by which to determine the adequacy of protecting Medicare's interests for future medical needs and/or expenses in conjunction with the settlement of third party claims, and since there is a strong public interest in resolving lawsuits through settlement, *McDermott, Inc. v. AmClyde,* 511 U.S. 202, 215, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994), the Court finds that Medicare's interests have been adequately protected in this settlement within the meaning of the MSP.

Based upon the foregoing conclusions of law,

IT IS HEREBY ORDERED that the plaintiff's motion for declaratory judgment [Doc. 69] is GRANTED IN PART AND DENIED IN PART. More particularly:

1. Based on the written confirmation from Medicare of conditional payments made by Medicare for services provided prior to the date of this order, Michael Benoit shall promptly reimburse Medicare for such conditional payments in the agreed upon amount of **$2,777.88;**

2. Michael Benoit shall provide funding for $10,138.00 out of the settlement proceeds for payment of future medical items or services, which would otherwise be covered or reimbursable by Medicare, related to what was claimed and released in this lawsuit.

3. The funding for Michael Benoit's future medical expenses shall be deposited into an interest-bearing account, which will be self-administered by Mr. Benoit's wife, Shelia Benoit, for the purpose of paying any future medical items or services that would otherwise be covered or reimbursable by Medicare that are related to what was claimed and released in this lawsuit.

4. All other requested relief is DENIED.

Signed at Lafayette, Louisiana, this 17th day of April, 2013.

_____
Patrick J. Hanna
United States Magistrate Judge